IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY FAVATA,                    :

    Plaintiff,                  :

    v.                          :        Civil Action No. 3:11-CV-551

KEVIN SEIDEL,                      :        (JUDGE RICHARD P. CONABOY)

    Defendant.                  :

_____

**MEMORANDUM**

Here we consider the parties' cross-motions for summary judgment.  (Docs. 12 and 16).  Plaintiff Anthony Favata ("Plaintiff" or "Favata") filed this action on March 24, 2011. Plaintiff's complaint (Doc. 1) included two counts.  Count I is predicated on 42 U.S.C. § 1983 and alleges that Defendant Kevin Seidel ("Defendant" or "Seidel") violated Plaintiff's exercise of his First Amendment rights while acting in his capacity as a Pennsylvania State Police Trooper and under color of state law. Count II asserted that Defendant's initiation of criminal proceedings against Plaintiff constituted a malicious prosecution under Pennsylvania law.[1]  The aforementioned motions are ripe for disposition.  For the reasons that follow, Plaintiff's motion will be denied and Defendant's motion will be granted.

_____

[1] Plaintiff subsequently withdrew Count II stating that he "agrees with Defendant that the state law malicious prosecution claim is barred by the doctrine of sovereign immunity."  (Doc. 21 at 13.)

**I. Background**

Count I, the sole remaining Count, of Plaintiff's complaint asserts, at its essence, that Defendant cited Plaintiff for disorderly conduct pursuant to 18 P.S. § 5503(a)(4), a summary offense under Pennsylvania law, due solely to the Plaintiff's act of displaying the middle finger to another driver during an altercation on an exit ramp off Pennsylvania Route 309 on October 23, 2010. (Doc. 1 at 3.) Plaintiff reasons that the display of one's middle finger to another person or persons constitutes free speech protected by the First Amendment and, accordingly, that his arrest was an improper retaliation by a state official for his exercise of a fundamental constitutional right. (Doc. 1 at 5.)

Defendant asserts that Plaintiff's display of the middle finger to the other motorist in the aforementioned altercation was but one factor in Defendant's decision to cite Plaintiff for violation of the Pennsylvania Disorderly Conduct Statute. (Doc. 19 at 4.) Defendant contends that other, completely legitimate reasons existed to support the issuance of the citation that is central to this case. (Doc. 19 at 5.) Defendant reasons that these legitimate reasons provided him with probable cause to issue the citation and, thus, negate Plaintiff's claim. (Doc. 19 at 7-8.)

2

## II.  Legal Standard

### *Summary Judgment Standard*

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's

3

case when the nonmoving party bears the ultimate burden of proof."
*Id.* at 325.  The non-moving party may not rest on the bare
allegations contained in his or her pleadings, but is required by
Federal Rule of Civil Procedure 56 to go beyond the pleadings by
way of affidavits, depositions, answers to interrogatories or the
like in order to demonstrate specific material facts which give
rise to a genuine issue.  *Id.* at 324.

    "In considering a motion for summary judgment, a district
court may not make credibility determinations or engage in any
weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when
evidentiary facts are in dispute, when the credibility of witnesses
may be in issue, or when conflicting evidence must be weighed, a
full trial is usually necessary.

**III.  Plaintiff's Motion for Summary Judgment**

    Plaintiff's brief in support of his motion for summary
judgment cites various cases for the proposition that one may make
untrammeled use of one's middle finger with utter disregard for the
context in which such an act takes place and with impunity to any
legal consequences.  (Doc. 15 at 5-6.)  Even assuming, *arguendo*,
that Plaintiff is correct in that regard, this Court concludes that
Plaintiff is not entitled to summary judgment on Count I of his
complaint because the record conclusively establishes that a
reasonable juror could conclude that the Defendant had probable
cause to issue the citation due to the existence of legitimate

4

factors apart from his display of his middle finger during the aforementioned altercation.[2]

The United States Supreme Court has held that, in an action to redress retaliation by a state official for the use of protected speech, the Plaintiff must prove that probable cause did not exist to support his prosecution. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006); *see also Fisher v. Matthews*, 792 F. Supp. 2d 745, 773 (M.D. Pa. 2011). Whether an officer had probable cause is dependent upon the information available to the officer at the time he makes an arrest or, in this case, issues a citation. *Snell v. City of York, Pennsylvania*, 564 F.3d 659 (3d Cir. 2009).

The citation at issue in this case was written on October 24, 2010, the day after Favata's altercation with the other motorist, one Dale Rapson ("Rapson"). (Doc. 1, Ex. A.) Defendant Seidel was not an eyewitness to the altercation and derived his knowledge about the incident from the accounts provided by Favata and Rapson. On October 23, 2010, Seidel had personally interviewed Favata and, later that day, spoke to Rapson via telephone. The antagonists gave Seidel starkly different accounts of what had precipitated the

---

[2] We note that, while there is much case law that characterizes the use of the extended middle finger as protected speech, there are other cases that suggest that the gesture may not be protected by the First Amendment in all contexts. In any event, we find it unnecessary to address that question at this point because mere material dispute over whether the police officer had probable cause to make an arrest in this situation is dispositive of the Plaintiff's summary judgment motion. Accordingly, the separate issue of whether Plaintiff's gesture, given the totality of the circumstances in which it was made, constituted unprotected "fighting words" pursuant to *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942), is not addressed here.

altercation.  In his deposition, Favata related: that Rapson had
been tailgating him for approximately 20 seconds; that Rapson was
driving aggressively and honking his horn; that he could see Rapson
in his rear-view mirror and that he (Rapson) appeared to be
enraged; that he displayed his middle finger to Rapson twice--once
in the rear-view mirror while Rapson was still seated in his
vehicle and again when Rapson left his vehicle and appeared at
Favata's driver's side door.  (Doc 17, Ex. B at 31-34.)

    Rapson told a decidedly different story.  Rapson stated: that
he was merely trying to proceed along the left shoulder of the ramp
to make a left turn; that Favata, who was in the lane waiting to
turn right, suddenly veered to his left to prevent Rapson from
proceeding; that Favata's maneuver was abrupt and almost caused a
collision of their vehicles; that he could see Favata laughing at
him; that Favata gave him "the finger"; that Favata then maneuvered
back into the right lane whereupon Rapson once more attempted to
pass on the left; that Favata again veered to his left to cut him
off and almost drove him into the guardrail in the process; and
that, after getting out of his vehicle to demand an explanation for
Favata's behavior, Favata once again gave him "the finger."  (Doc.
17, Ex. C at 11-12.)

    Only after listening to these conflicting accounts of what
happened on that exit ramp on October 23, 2010, did Seidel cite

both drivers.[3]  Each driver was cited under 18 P.S. § 5503(a)(4),

which, in pertinent part, provides:

> (a) Offense defined. A person is guilty
> of disorderly conduct if, with intent to
> cause public inconvenience, annoyance or
> alarm, or recklessly creating a risk thereof,
> he:
>
>> (1) engages in fighting or
>> threatening, or in violent or
>> tumultuous behavior;
>>
>> (2) makes unreasonable noise;
>>
>> (3) uses obscene language, or makes an
>> obscene gesture; or
>>
>> (4) creates a hazardous or physically
>> offensive condition by any act which
>> serves no legitimate purpose of the
>> actor.

The Supreme Court of Pennsylvania has held that the propriety

of a disorderly conduct citation is to be determined by analysis of

whether the defendant's conduct constitutes "...public unruliness

which can or does lead to tumult or disorder." *Commonwealth v.

Hock*, 728 A.2d 943, 946 (Pa. 1999) (citing *Commonwealth v. Green*,

189 A.2d 141, 145 (Pa. 1963)).  In light of the plain language of

§ 5503(a)(4), the Pennsylvania Supreme Court's interpretation of

that statute, and the deposition testimony of Favata and Rapson,

this Court finds it is obvious that a reasonable juror could

conclude that, based upon the information provided to Seidel before

---

[3] Because Rapson is not a party to this case and because neither party has supplied a copy of his citation, we find no need to address the specifics of Rapson's citation.

7

he issued Favata's citation, Seidel had reason to believe that

Favata's behavior created, in the parlance of 18 P.S. § 5503

(a)(4), "a hazardous condition... which served no legitimate

purpose" and led to "tumult or disorder" on a public highway.

Thus, consistent with the standard sanctioned by the Third Circuit

in *Snell v. City of York*, *supra*, a reasonable juror could conclude

that Seidel had probable cause to cite Favata.  Accordingly,

Favata's motion for summary judgment must be denied.

## IV.   Defendant's Motion for Summary Judgment

Defendant's brief in support of his motion for summary

judgment states that after he separately interviewed the Plaintiff

and Rapson "...the information available to [him] provided probable

cause to believe that plaintiff had engaged in disorderly conduct

that created a hazardous condition." (Doc. 18 at 4.) Defendant

cites *Hartman v. Moore*, *supra*, for the proposition that the

existence of probable cause to support the citation he issued to

Plaintiff defeats Plaintiff's claim--one based upon an allegation

of retaliatory prosecution against the exercise of rights conferred

by the First Amendment.  (Doc. 18 at 6.)[4]

---

[4] Defendant also argues, as a fall back position, that even were this Court to conclude that Favata's conduct could not appropriately be charged under 18 P.S. § 5503 (a)(4), he would still prevail because his "good-faith mistake of fact of law" would cloak him with qualified immunity under the standard articulated in *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  (Doc. 19 at 11.)  We find it unnecessary to consider Defendant's argument regarding qualified immunity because of our conclusion that the Defendant had probable cause to issue Favata's citation.  *Hartman v. Moore*, *supra*, *see also Turzai v. City of Pittsburgh*, 2012 WL 112860 (C.A. 3 (Pa.))(not precedential).

Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The Court's task in making a probable cause determination turns on "whether the objective facts available to the officer at the time of the arrest were sufficient to justify a reasonable belief that an offense [had been] committed." *U.S. v. Glasser*, 750 F.2d 1197, 1206 (3d. Cir. 1984), cert. denied, 471 U.S. 1018 (1985); *see also Snell v. City of York, supra, and Curley v. Klem*, 499 F.3d 199, 207 (3d. Cir. 2007).  The question of probable cause is determined using an objective standard, based on the facts available at the time.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).

Police have probable cause to arrest even when "criminality is one reasonable inference; it need not be the only, or even the most likely, inference." *Eckman v. Lancaster City*, 742 F. Supp. 2d. 638, 651 (E.D. Pa 2010) (quoting *Commonwealth v. El*, 933 A.2d 657, 661 (Pa. Super. 2007)).  The existence of probable cause in an action under 42 U.S.C. § 1983 is generally a question for the jury. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 788-89 (3d Cir. 2000).  "The district court may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the] plaintiff, reasonably

would not support a contrary factual finding." *Sherwood v.
Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

There are aspects to this record that do call into question
Defendant Seidel's motive for issuing citations to Favata and
Rapson.  Favata's deposition testimony indicates that he and Seidel
conversed about the probability of a "middle finger citation"
holding up in court.  (Doc. 17, Ex. B at 38.)  Seidel's deposition
testimony does not squarely refute Favata's contention on that
point and indicates that "I probably did inform him that he may
also be cited."  (Doc. 20, Ex. D at 12.)  Thus, a reasonable juror
could conclude that, because the conversation between Favata and
Seidel occurred before Seidel interviewed Rapson and heard
additional details about Favata's alleged reckless operation of his
vehicle during the altercation, Seidel may have intended to cite
Favata for disorderly conduct on the basis of Favata's hand
gesture.  Moveover, upon hearing Rapson's testimony that Seidel had
decided to issue citations to both motorists to "teach you guys a
lesson," a reasonable juror could conclude that Seidel's expressed
reasons for issuing the citation were, to some extent, contrived.
Yet, contrived or not, the determination of whether probable cause
existed to support Favata's citation is not dependent upon any
analysis of the Defendant's motives.  Rather, the appropriate
inquiry is whether a reasonable officer possessed of the facts
available to the Defendant could conclude that Favata had committed

10

a crime.  *Barna v. City of Perth Amboy*, *supra* at 819-20.

While Seidel's motives for writing Favata's citation may not have been crystal clear or entirely laudable, the critical fact remains that he did not write Favata's citation until exercising due diligence to gain Rapson's account of what happened and why. It was only after hearing Rapson's account of Favata's alleged reckless operation of his own vehicle during their altercation that Seidel issued the citation.  Moreover, the type of vehicular brinksmanship Rapson attributed to Favata would be enough to warrant a reasonable policeman to believe that a crime had been committed.  Therefore, crediting Rapson's account of what happened, a reasonable policeman could conclude that Favata's reckless maneuvers of his vehicle constituted criminal activity.  Thus, the fact that Seidel had a legitimate factual basis on which to write the citation is the determining factor that compels this Court to conclude: (1) that he had probable cause to issue it; (2) that any improper motive that may be attributed to him is irrelevant; and (3) that he is entitled to judgment against Plaintiff's claim as a matter of law.  Accordingly, Defendant's motion for summary judgment must be granted.

## IV.  Conclusion

For the reasons discussed above, the Plaintiff's Motion for
Summary Judgment (Doc. 12) is denied and the Defendant's Motion for
Summary Judgment (Doc. 16) is granted.  An appropriate Order
accompanies this Memorandum.

 S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: March 23, 2012